69533. NORRIS et al. v. ATLANTA & WEST POINT RAILROAD COMPANY.
(330 SE2d 151)

BIRDSONG, Presiding Judge.

Doctrine of Binding Precedent. The facts giving rise to this law suit show that Norris was an employee of Signal Delivery Service, Inc. (SDSI) and drove his truck upon a railroad crossing into the path of an approaching train. A crewman of that train was holding on to a step and standing on a lower step of a ladder on the rear of the engine. The stop caused by the sudden braking and the train running into the truck threw the crewman against another part of the engine, injuring his back. The crewman brought suit in Fulton County against SDSI for personal injuries alleging that the accident and his injuries

---

[1] As to court sua sponte amending a case style, see *McKinney v. Schaefer*, 117 Ga. App. 595, 596 (1) (161 SE2d 446) (1968).

resulted from the sole negligence of Norris. SDSI, as the employer of Norris, defended on the ground that the railroad was negligent in failing to give appropriate signal warning or to furnish a safe crossing and that the crewman was injured through his own negligence. Norris was called as a witness and testified fully on the issues of negligence. The jury resolved the issues of fact, necessarily finding the accident and injuries were the direct result of the negligence of Norris and by the doctrine of respondeat superior assessed a verdict of $20,000 in favor of the crewman against SDSI. Subsequently, Norris and his wife instituted the present proceedings by filing their own joint complaint in Coweta County against the railroad for injuries suffered in the accident together with an action by his wife for loss of consortium.

The parties on appeal wrestle with issues of res judicata and collateral estoppel. Though there can be no disagreement with the correctness of the legal principles of res judicata as between the same parties in previous litigation, or the necessity of privity in relation to res judicata, estoppel by judgment or collateral estoppel; nor to the relative rights as between master and servant where favorable or adverse judgment has been rendered for one or the other, there is no relevancy of these principles of law to the facts of this case. As we see the real issue, by applying the principles of binding precedent to the facts of this case, we conclude the failure to apply the principles of res judicata to this case has neither denied Norris or his wife their day in court nor denied them due process of law.

The doctrine of binding precedent apparently had its genesis in *Bray v. Westinghouse Elec. Corp.*, 103 Ga. App. 783 (120 SE2d 628). The *Bray* case at 103 Ga. App. 783, supra, was preceded by a suit by Bray's wife also against Westinghouse but for loss of consortium. *Bray v. Westinghouse Elec. Corp.*, 102 Ga. App. 803 (117 SE2d 919). In that case Mrs. Bray sued Westinghouse for loss of consortium due to injuries received by her husband emanating from the alleged negligence of Westinghouse. Westinghouse established that the injuries were in fact caused by the negligence of a fellow employee of Bray and the trial court sustained a general demurrer to Mrs. Bray's complaint. Thereafter, Bray himself brought suit against Westinghouse seeking recovery for his own injuries. His complaint in effect was a restatement of the allegations of negligence contained in his wife's earlier suit for loss of consortium. This court sustained the trial court's grant of Westinghouse's demurrer on the basis that any issue of liability attaching to Westinghouse had already been adjudicated adversely as to Mr. Bray. Even though the former judgment did not qualify as an estoppel by judgment because the parties were different, the prior judgment was a binding precedent because the controlling issue in the second case (103 Ga. App. 783) (the cause of Mr. Bray's injuries) had already been adjudicated (102 Ga. App. 803) under sub-

stantially similar allegations.

In *Russ Transport v. Jones*, 104 Ga. App. 612 (122 SE2d 282), the employee of Russ Transport was involved in a collision with a car driven by Mrs. Jones. Russ Transport sued Mrs. Jones in federal court and she counterclaimed for her personal injuries received in the collision. The jury returned a verdict resulting in a discharge of all liability of Russ Transport to Mrs. Jones on her cross complaint and a discharge of all liability of Mrs. Jones to Russ Transport on its complaint. Thereafter, Mr. Jones sued Russ Transport for recovery of medical expenses and loss of consortium. This court, in allowing the husband's suit, held that neither the parties nor the issues were the same in the two suits. While in the first suit the wife was seeking damages for personal injuries, the husband in the second suit was seeking lost services, different damages. Thus husband and wife lacked privity in their respective lawsuits. See in this regard *Armstrong Furniture Co. v. Nickle*, 110 Ga. App. 686 (140 SE2d 72) and *Blakewood v. Yellow Cab Co. of Savannah*, 61 Ga. App. 149 (6 SE2d 126). Subsequently in *Stapleton v. Palmore*, 162 Ga. App. 525 (291 SE2d 445), the lack of necessity of privity between spouses was again recognized where one suit was for personal injuries (with an adverse result) and the second suit was for loss of services.

However, it had been recognized in *Hightower v. Landrum*, 109 Ga. App. 510, 514 (136 SE2d 425) that the right of a spouse to recover for loss of consortium due to injuries incurred by the other spouse cannot arise unless the right to consortium was adversely affected by the other spouse's injuries and those personal injuries arose from acts for which liability attaches. This is a recognition of the rule announced in the second *Bray* case, 103 Ga. App. 783, supra, that if the spouse seeking loss of consortium sues first alleging that certain acts of negligence caused the other spouse's injuries and receives an adverse judgment, the injured spouse is barred from a second suit seeking damages for personal injuries because the very acts of negligence upon which liability is to attach have already been litigated with an adverse result.

Thus it is apparent that whether we must seek and apply findings of privity as required in a bar of estoppel by judgment and thus in effect apply res judicata or whether no question of privity is involved because a prior binding precedent attaches depends upon whether the first suit was simply based upon the injured spouse's personal damages or based solely upon loss of consortium and the second suit was not relitigating the exact same issues of liability. *Stapleton v. Palmore*, 250 Ga. 259 (297 SE2d 270); *Hightower*, supra; *Bray*, 103 Ga. App. 783, supra. As previously recognized, there is no privity in separate suits by spouses for they seek different damages for different injuries except in those cases such as the two *Bray* cases where

though different damages were sought, the damages were based upon the same identical allegations of negligence which had been considered and received an adverse result in a court of competent jurisdiction.

The Supreme Court on certiorari of this court's decision in 162 Ga. App. 525, in the *Stapleton v. Palmore* case, 250 Ga. 259, supra, clearly recognized this dichotomy. It further amplified and gave direction where a case involved the issue of lack of privity as between the two differing causes of action by concluding (as did this court in the earlier decision at 162 Ga. App. 525) that where the two spouses bring their suit simultaneously, the same jury reaching a finding as to both spousal complaints of a lack of actionable negligence by the defendant as to the injured spouse, likewise must find no liability as the loss of consortium claim, for the issue of negligence and liability has been litigated adversely as to both claims (consistent with the *Bray* and *Hightower* rationale). Because of the problems created by spouses bringing their separately based actions before different juries (thus not derivative in effect) as contrasted with bringing their separately based actions before the same jury (thus making the consortium claim wholly derivative), it concluded that joinder of such actions was required to obviate the disparate and confusing results, though failure by the parties to require joinder would not change the possibility of adverse results.

This analysis of the above discussed consortium cases forces the conclusion that this state recognizes, accepts, and will apply the doctrine of binding precedent under appropriate circumstances. The earlier cases decided and discussed herein point unerringly to the result reached by this court in the case of *Lowe Engineers v. Royal Indem. Co.*, 164 Ga. App. 255, 259 (297 SE2d 41). In that case, we stated that the doctrine of binding precedent provides where the issue of liability has been litigated in an earlier trial before a court of competent jurisdiction upon the same facts and same issues as between the litigating parties with positive results and those parties must now look to the same facts as relied upon in that previously adjudicated result, the former judgment, although not res judicata, estoppel by judgment nor collateral estoppel as to the present action because the parties are different, does indeed constitute a binding precedent because the controlling issue has already been litigated under substantially similar allegations.

In this case, Norris was called as a witness and unsuccessfully sought to show his acts were not negligent and did not cause the accident which resulted in injury to Atlanta and West Point's employee; rather that Atlanta and West Point was negligent in the maintenance and efficacy of the warning signal and grade crossing. He now seeks to relitigate that exact same issue upon the same facts. Mrs. Norris also

seeks loss of consortium, a separate action admittedly, but filed as a joint action and thus her action is subject to the same result as her husband's. *Hightower v. Landrum,* supra.

Though the railroad moved for summary judgment on principles of res judicata and collateral estoppel, the trial court simply granted the railroad summary judgment. In light of the applicability of the doctrine of binding precedent, we conclude the judgment of the trial court is proper and legal for an appropriate reason. Thus, we will affirm the decision regardless of the speculation that there may be a possibly erroneous reason for such judgment. *Argonaut Ins. Co. v. Cline,* 138 Ga. App. 778, 782 (4) (227 SE2d 405).

*Judgment affirmed. Banke, C. J., Deen, P. J., Sognier, Pope, and Benham, JJ., concur. Deen, P. J., Pope, and Beasley, JJ., concur specially. McMurray, P. J., and Carley, J., dissent.*

BEASLEY, Judge, concurring specially.

The Civil Practice Act provides that it "shall be construed to secure the just, speedy, and inexpensive determination of every action." OCGA § 9-11-1. The Constitution of Georgia of 1983 itself embraces this theme in requiring that uniform court rules and record-keeping rules be adopted "which shall provide for the speedy, efficient, and inexpensive resolution of disputes and prosecutions." Art. VI, Sec. IX, Par. I. The benches and bars throughout the country are working on what has become familiar as "reducing court costs and delay." Our own State Bar in 1984 created a Special Committee to Reduce Court Costs and Delay. The American Bar Association Action Commission to Reduce Court Costs and Delay, created in 1979, published its findings and recommendations in 1984 in a report entitled "Attacking Litigation Costs and Delay." Its Executive Summary states: "Excessive delay and costs in our civil courts must be controlled; they can be controlled; . . ." Last year also, the General Assembly created by resolution the Governor's Judicial Process Review Commission based, in part, on the constitution's above-stated mandate. Ga. L. 1984, p. 980.

In keeping with the philosophy thus espoused more urgently of late, and in express compliance with the Civil Practice Act's stated purpose, we should construe and apply the laws to achieve these results, in keeping with the fundamental precepts of due process.

Judge Birdsong for the majority gives the heart of what is in issue here when he writes: "the very acts of negligence upon which liability is to attach have already been litigated with an adverse result." Or, I would add, could have been so litigated.

The railroad's employee, a flagman who was standing on the train and got thrown off and injured in the collision, brought the first suit, alleging that the collision was due to Norris' negligence and that his employer was liable based on respondeat superior. Norris, of course,

was a witness for his employer. The railroad's employee won, thus establishing as a matter of law that Norris was found negligent. That was the substantive basis, the issue tried.[1] One of the defenses of Norris' employer, who admitted that Norris was its agent and was acting within the scope of his employment, was that the plaintiff flagman's injuries, if any, were caused by his own negligence. Although it did not defend on the ground that a third party, such as the employer railroad by other of its employees, was negligent, this issue would have been before the jury because it had to decide that Norris alone was negligent and caused the collision. His employer, who was responsible for his acts, did not so contend.

Although the flagman did not sue Norris but only his employer based on Norris' alleged negligence, Norris obviously could have become a party to the suit if he or his employer believed himself blameless and that the collision was due to the flagman's or the railroad's negligence. OCGA § 9-11-19 (a) (2): "A person who is subject to service of process *shall* be joined as a party in the action if: . . . He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest;[2] or (B) Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.[3] If he has not been so joined, the court shall order that he be made a party . . .[4] If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."[5] (Emphasis supplied.)

The goal of judicially trying the issues only once and for all is further achieved by the stated objective underlying the device of permissive joinder in OCGA § 9-11-20 (a): "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any

---

[1] As distinguished from a case where the employer's own negligence is alleged, as for example in negligently hiring an incompetent employee. A different issue of liability would arise in such circumstances.

[2] Such as now being foreclosed from relitigating the issue of his own negligence in causing the collision.

[3] The flagman was subject to a substantial risk of Norris' later filing suit against him, claiming the collision was his, not Norris', fault.

[4] Thus the flagman's election not to sue the employee but only the employer would not be dispositive.

[5] From the record, it appears that the Norrises lived either in Fulton County or in Clayton County at the time the Fulton suit was instituted. Assuming Mr. Norris did not live in Fulton, he apparently does not object to the issues being tried outside the county of his residence, for he has filed the instant suit in Coweta County.

question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief and against one or more of the defendants according to their respective liabilities." The goal of complete and full disposition is further to be carried out by the use of the procedural instruments of interpleader (OCGA § 9-11-22) and intervention (OCGA § 9-11-24). Note that all of these aim at avoidance of multiple lawsuits, double or multiple liability, and/or inconsistent judgments.

The Norrises now sue the railroad, not its employee, alleging that the "lights and bells" signaling devices were not operating to warn Mr. Norris not to cross the tracks and that the railroad was negligent "in its failure to properly maintain the crossing, in its operations of its locomotive at the crossing at the time of the collision, in its obscuring of a driver's approaches to the crossing by the leaving of other car or engines on the tracks in close proximity to the crossing, and by such other acts of negligence which shall be shown by the evidence." While it is true that all of these issues were not raised by Norris' employer in defending against the suit by the flagman, they could have been, because the suit revolved around the cause of the collision. All of the rights to relief asserted in these two lawsuits are "arising out of the same transaction, occurrence, or series of transactions or occurrences" so could have been adjudicated there, "if any question of law or fact common to all of them will arise in the action," OCGA § 9-11-20 (a), which it clearly did.

Had Norris been added, he could have brought in the employee's employer, the railroad he now sues, through use of the same procedural tools discussed above. Although one might say, "but the railroad is to be sued in Coweta, not Fulton, County," the railroad here is arguing that it is bound by the issue determination in Fulton, so it cannot very well state that there would have been no jurisdiction over it to impose the effects of resolution of that issue on it.[6] Proper venue, of course, is not to be overlooked, and the Civil Practice Act's objective of bringing everyone interested in the liabilities arising out of an

---

[6] Of course, if the verdict in Fulton had been against the flagman employee of the railroad, the latter would want to argue that the jury's finding Norris *not* negligent did not bind the railroad. That might be true if jurisdiction could not be had by way of consensual joinder or waiver of venue. Such right is guarded by OCGA § 9-11-19 (a).

event like a vehicle collision into one suit honors the principles of venue. As pointed out earlier, if the court joins a party who objects because of improper venue, he shall be dismissed from the action. OCGA § 9-11-19 (a) (2) (B). If that occurs, it may be difficult to bind him to the findings of liability/non-liability.

As to Mrs. Norris' independent cause of action, it is bottomed on the very same negligence which will or will not support his claim. The acts of negligence are the very ones of which her husband complains; they are no more and no less; what is different is her status. The law gives spouses a right to recover loss of consortium damages because they are spouses, not because there are different or additional acts of negligence. Her husband's negligence, as found by the Fulton jury, should be dispositive as to her. It is not, of course, because the law recognizes hers as a separate and distinct claim, and she is not bound by that trial. *Stapleton v. Palmore*, 250 Ga. 259 (297 SE2d 270) (1982); *Deese v. Parks*, 157 Ga. App. 116, 118 (276 SE2d 269) (1981). But she like the others, could have been added in the first suit. See *Stapleton*, supra. Her right to recover is based solely on the alleged negligence of the railroad towards her husband and is based on that. There are no allegations of negligence towards her, except as she is the injured party's wife.

The law having provided an opportunity for all parties to be heard by a jury on the question of Mr. Norris' negligence, which was found to be the cause of the collision and the resulting injuries to the flagman, the question should be settled conclusively. Otherwise the endless litigation of which this is an example lumbers on indefinitely, consuming financial and judicial resources as it goes.

I am authorized to state that Presiding Judge Deen and Judge Pope join in this special concurrence.

CARLEY, Judge, dissenting.

Because it is my opinion that the majority's affirmance of the grant of summary judgment to the Railroad results in a denial of due process to the Norrises, I must dissent. " 'Privity does not mean those who might be affected and whose liability might be fixed by the same set of facts.' [Cit.]" *Smith v. Wood*, 115 Ga. App. 265, 269 (154 SE2d 646) (1967). "[A]n agency or master-servant relationship [does not] ipso facto [constitute] privity for purposes of res judicata or estoppel by judgment." *Davis v. Bryant*, 117 Ga. App. 811, 812 (162 SE2d 249) (1968). Instead, determining the applicability of res judicata and estoppel by judgment in cases involving the master-servant relationship has become somewhat complicated by virtue of another legal principle involved in such cases, to wit: derivative liability. With specific reference to a master, the applicability of res judicata and estoppel by judgment is dependent upon the outcome of the previous suit against

his servant and the nature of the subsequent suit in which the master is a party. If the subsequent suit is premised upon respondeat superior, the master as a defendant may claim *the benefit* of an earlier judgment favorable to his servant. *Gilmer v. Porterfield*, 233 Ga. 671 (212 SE2d 842) (1975). However, regardless of the outcome of an earlier suit by or against his servant, that judgment will *not* bar a subsequent suit brought *by a master* in his capacity as a plaintiff. "*Due process of law* requires that the master, not having been a party to the prior adjudication, have his day in court." (Emphasis supplied.) *Gilmer v. Porterfield*, supra at 674. Accordingly, under these rules, the Railroad would, as a general proposition, be entitled to rely upon the previous judgment in the Fulton County action as a defense to a subsequent suit brought against it based upon its liability for the negligence of its flagman. However, this does not resolve the issue in the instant case. The specific question is whether the Railroad is entitled to raise the previous judgment as a viable defense against the Norrises. In order for the Norrises to be barred by the judgment in the Fulton County action they *too* must be privies of a party to that judgment. "While the judgment of a court of competent jurisdiction is conclusive between parties and privies as to the issue which it decides, it is not so as to third persons." *Hart v. Manson*, 119 Ga. 865 (4) (47 SE 345) (1904).

With reference to a servant, it likewise appears that the applicability of res judicata depends upon the outcome of the previous suit against his master and the nature of the subsequent suit in which the servant is a party. When the servant is the defendant in a subsequent suit, he may, under certain limited circumstances, be entitled to claim *the benefit* of a previous judgment *in favor* of his derivatively liable master. See *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 249 Ga. 662, 664 (293 SE2d 331) (1982). Compare *Gilmer v. Porterfield*, supra. The servant may, in certain circumstances, also be entitled to rely defensively upon a previous judgment which was unfavorable to his master. See *Nannis Terpening & Assoc. v. Mark Smith Constr. Co.*, 171 Ga. App. 111 (318 SE2d 89) (1984).

However, as noted above, the issue in the instant case is the extent to which a servant who becomes a subsequent plaintiff will be *barred* by a previous judgment which was unfavorable to his master. It appears that in such a circumstance, the same rule attaches as in the case of a master whose servant has previously been sued to an unfavorable judgment. That is, the servant likewise will *not* be bound by his master's previous unfavorable judgment. See generally *Davis v. Bryant*, supra; *Hunter v. Embree*, 122 Ga. App. 576 (178 SE2d 221) (1970). Again, due process is the reason that the servant is not bound by his master's unfavorable judgment. "The motivating reason is succinctly stated thusly: '. . . because it is unjust to bind one by any

proceeding in which he had no opportunity to make a defense, to offer evidence, to cross-examine witnesses, or to appeal, if he was dissatisfied with the judgment.' [Cit.]" *Blakely v. Couch*, 129 Ga. App. 625, 629 (200 SE2d 493) (1973). See also *Blakewood v. Yellow Cab Co.*, 61 Ga. App. 149 (3) (6 SE2d 126) (1939). The Norrises have never had this opportunity. The majority opines that the Norrises seek to relitigate the same issue as that which was raised in the Fulton County action. The truth is *they* have never litigated. They were not parties to the Fulton County action. Contrary to Judge Beasley's special concurrence, I know of no rule of law that requires one to intervene in a suit as a defendant in order to preserve his rights as against another who is also *not* a party to the action. Res judicata and estoppel by judgment depend upon privity, not judicial economy. Judicial economy, if violative of due process, is neither judicious nor economical.

Thus, under the generally recognized principles of res judicata and estoppel by judgment, the Norrises are not *bound* by the judgment against SDSI in the Fulton County action. *Davis v. Bryant*, supra. "Due process of law requires that [the Norrises], not having been [parties] to the prior adjudication, have [their own] day in court." *Gilmer v. Porterfield*, supra at 674. Accordingly, as against the Norrises, I would hold that the Railroad has no res judicata or estoppel by judgment defense.

The majority asserts, however, that the Railroad was properly granted summary judgment under the "doctrine of binding precedent." See *Lowe Engineers v. Royal Indem. Co.*, 164 Ga. App. 255, 259 (297 SE2d 41) (1982). Apparently, as the majority recognizes, the legal principle denominated as the "doctrine of binding precedent" entered the jurisprudence of this State in *Bray v. Westinghouse Elec. Corp.*, 103 Ga. App. 783 (120 SE2d 628) (1961). In that case, a wife's previous unsuccessful suit for loss of consortium was held to constitute a bar to her husband's subsequent suit for personal injuries. However, in *Stapleton v. Palmore*, 162 Ga. App. 525-526 (291 SE2d 445) (1982), it was expressly recognized that the *Bray* decision was in conflict with another line of cases which held "that the spouse is neither privy nor party to the injured plaintiff's cause of action insofar as consortium rights are concerned, and thus under principles of res judicata is not barred by a prior verdict in an earlier trial in favor of the defendant as to liability for tort to the injured party. . . .[Cits.]" This court concluded in *Stapleton* that the latter line of cases was controlling rather than *Bray* and its progeny. On certiorari, the Supreme Court agreed that *Bray* would no longer be considered controlling authority in this State. *Stapleton v. Palmore*, 250 Ga. 259 (297 SE2d 270) (1982). Thus, insofar as the Supreme Court has clearly established that the *Bray* decision does *not* constitute viable authority, I believe that any discussion of the "doctrine of

binding precedent" must start from the premise that it is currently a doctrine of somewhat dubious effect.

Moreover, the necessity for legal resort to the so-called "doctrine of binding precedent" has recently been questioned. "[T]he result in *Lowe* was mandated by application of the established doctrine of estoppel by judgment." *Knight v. Western Intl. Hotels &c. Co.*, 172 Ga. App. 630, 632-633 (323 SE2d 914) (1984) (Carley and Beasley, JJ., concurring specially). As previously noted, the law has long recognized that the principles of res judicata and estoppel by judgment have applicability in cases which involve derivative liability. See generally *Roadway Express v. McBroom*, 61 Ga. App. 223, 227 (6 SE2d 460) (1939). The principles of res judicata and estoppel by judgment apply not only in cases in which the derivative liability is predicated upon respondeat superior; they also have application in cases where the derivative liability is predicated upon indemnification. For example, *McArthor v. Ogletree*, 4 Ga. App. 429, 433 (61 SE 859) (1908) discusses the application of the principle of "estoppel by judgment" in the context of a subsequent action for indemnification. The action in *Lowe Engineers* was predicated upon contractual indemnification. The insurer-defendant's liability was ultimately based upon the liability of the insured-plaintiff for the death of the latter's employees and upon a contract of indemnification. Thus, the insurer-defendant in *Lowe Engineers* was entitled to rely upon the previous judgment against its insured as "fix[ing] the maximum limit of liability" (*Roadway Express v. McBroom*, supra at 227), and as "determin[ing] the relationships and liabilities between [itself] and [its insured]" (*McArthor v. Ogletree*, supra at 432), insofar as the contract specifically excluded coverage for the liability established by the previous judgment. Accordingly, although the result in *Lowe Engineers* was correct. I would overrule it insofar as it purports to enunciate a "doctrine of binding precedent" which, under existing law, I find to be not otherwise necessary or warranted and which — as demonstrated by the majority opinion in the instant case — is susceptible of being applied in such a way as to violate the due process rights of litigants.

The majority apparently concludes that the Norrises are not being denied due process because the doctrine of binding precedent is applicable. I submit that the majority's analysis is backwards. The question should be whether application of the doctrine of binding precedent would violate due process under the circumstances of the instant case. The Fulton County action established only SDSI's liability to *one* of the Railroad's employees. The Norrises were neither parties nor are they privies to a party in that action against Mr. Norris' employer. *Davis v. Bryant*, supra. The instant action seeks to establish the Railroad's liability to the Norrises. It is not barred by res judicata or estoppel by judgment, and, as discussed, I do not believe

that there is any viable *separate* "doctrine of binding precedent" in this State. I note again that "[d]ue process of law requires that [the Norrises], not having been [parties] to the prior adjudication, have [their] day in court." *Gilmer v. Porterfield,* supra at 674. Accordingly, I must respectfully dissent.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 29, 1985 — 

*L. Lin Wood, Jr., John O. Moore, Thomas F. Brown II,* for appellants.
*Willis G. Haugen, Delia T. Crouch,* for appellee.