642 A.2d 239

Albert P. WARNER, et ux.

v.

Edgar Hobbs GERMAN, Jr., et al.

No. 1319, Sept. Term, 1993.

Court of Special Appeals of Maryland.

April 29, 1994.

Reconsideration Denied June 28, 1994.

514

E. Scott Collins, Ocean City, for appellants.

David B. Douse (Chris S. Mason and Webb, Burnett, Jackson, Cornbrooks & Wilber, on the brief), Salisbury, for appellees.

Argued before BLOOM, FISCHER and HARRELL, JJ.

HARRELL, Judge.

On 5 March 1992 the Mayor & City Council of Ocean City (Ocean City) filed suit in the District Court for Worcester County against Edgar Hobbs German Jr. and G.T. Tech, Inc., appellees, for property damage sustained by an Ocean City police car in an automobile accident. On 25 June 1992, Sgt.

Albert Warner, Ocean City's police employee who had been driving Ocean City's vehicle in the pertinent accident, and his wife, appellants, sued appellees in the Circuit Court for Baltimore County for damages resulting from his personal injuries and her loss of consortium stemming from the accident.

The District Court for Worcester County (Bloxom, J.) found both drivers, Sgt. Warner and Mr. German, to have been negligent and entered judgment in the property damage suit in favor of the appellees on 1 July 1992. The Circuit Court for Worcester County (Eschenburg, J.) affirmed that result on appeal. No further appeal was noted by Ocean City from that judgment.

Appellees thereafter filed in the litigation pending in Baltimore County a motion for summary judgment based on the preclusive effect of the Worcester County judgment. The Circuit Court for Baltimore County granted this motion on 20 April 1993. Appellants filed this timely appeal. They present two questions, which we have slightly re-phrased, for review:

1. Did the lower court err in granting defendants'/appellees' summary judgment?

2. Is the decision in the case of *Mayor & City Council of Ocean City v. G.T. Tech and Edgar Hobbs German* res judicata as against the appellants?

## Facts

On 9 August 1991, Mr. German was driving a vehicle owned by G.T. Tech in Ocean City, Maryland, when he struck an Ocean City police car being driven by Sgt. Albert Warner in the course of his police duties. Both vehicles were damaged as a result of the accident. Sgt. Warner also suffered personal injuries.

On 5 March 1992, the Mayor & City Council of Ocean City filed suit (*German I*) against German and G.T. Tech in the District Court for Worcester County for property damage to its police car. The court heard testimony from both drivers during the 1 July 1992 trial and concluded that, although German was negligent in causing the accident, Warner was

contributorily negligent. Specifically, Judge Bloxom found that Sgt. Warner had failed to use due care by traveling at 35–40 miles per hour in the bus lane on Coastal Highway, during a "terrible rainstorm," without his emergency equipment in operation. The court therefore entered judgment for the defendants/appellees. The Circuit Court for Worcester County, on appeal by Ocean City, affirmed the judgment and specifically the determination of Sgt. Warner's contributory negligence. Judge Eschenburg posited his decision in the latter regard on Sgt. Warner's failure to activate his emergency equipment under the weather and traffic conditions prevailing at the time of the accident.

Appellants had filed suit (*German II*) against German and G.T. Tech in the Circuit Court for Baltimore County on 25 June 1992. The record indicates that the defendants/appellees received notice of this filing on 6 July 1992, six days after the Worcester County District Court trial was held. Appellees filed a Motion for Summary Judgment against appellants on 5 March 1993, arguing that *German II* should be barred based on the principle of res judicata and appellants' failure to join their personal claims in *German I*. The Circuit Court for Baltimore County granted this motion on 20 April 1993, and this appeal followed.

## Discussion

### Standard of Review

 Summary judgment is reserved for situations in which the movants clearly demonstrate the absence of any genuine issue of material fact and that they are entitled to judgment as a matter of law. Md.Rule 2–501(a). The threshold issue in a proper motion for summary judgment, therefore, is whether a significant factual dispute exists. *See Bond v. NIBCO, Inc.,* 96 Md.App. 127, 135, 623 A.2d 731 (1993) (ruling that a summary judgment motion "is to be granted unless the parties truly dispute a material fact."). Although all reasonable inferences from the facts are to be considered in the light most favorable to the non-moving party, Maryland courts narrow their focus to those facts that will "somehow affect the

outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). Facts that do not pertain to the core questions involved are not "material" and, consequently, are insufficient to avert a proper motion for summary judgment.

 Because the absence of any material factual dispute is required for a grant of summary judgment, the trial court essentially makes a ruling as a matter of law. *See Heat & Power v. Air Products,* 320 Md. 584, 591, 578 A.2d 1202 (1990) ("A trial court determines issues of law when granting summary judgment."). As a result, the ultimate standard for appellate review of the trial court's decision essentially is whether the court was legally correct. *Id.*

 Finally, when analyzing the lower court's decision, we ordinarily are confined to the basis relied on by that court and may not otherwise explain its conclusion by introducing new legal theories. *See Cheney v. Bell Nat'l Ins. Co.,* 315 Md. 761, 764, 556 A.2d 1135 (1989) ("[O]rdinarily we will not affirm the granting of summary judgment for a reason not relied upon by the trial judge."); *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988) ("[T]he appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, if the alternative ground is one as to which the trial court had a discretion to deny summary judgment.").[1]

### Res Judicata

 In Maryland, the doctrine of res judicata is defined in the following terms:

---

1. This is of particular relevance to the instant case because appellees relied on res judicata as their sole legal ground for moving for summary judgment, according to what appears in the record extract. Although collateral estoppel additionally was asserted in appellees' Answer to the Bill of Complaint in *German II,* German and G.T. Tech did not rely on that ground in their Memorandum In Support of Motion For Summary Judgment. The record extract does not reveal that the trial judge, in granting summary judgment, considered any ground other than that raised in appellees' motion. Accordingly, we shall consider whether the grant of that motion is legally correct on the ground of res judicata only.

[A] judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.

*See Rowland v. Harrison,* 320 Md. 223, 229, 577 A.2d 51 (1990). This policy avoids "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989). In order to invoke the doctrine of res judicata properly, a court must be able to conclude the following: (1) the parties are the same as, or in privity with, the parties to the earlier dispute; (2) the issue presented is identical to the one determined in the prior adjudication; and, (3) there was a final judgment on the merits in the initial action. *Lone v. Montgomery County,* 85 Md.App. 477, 490–91, 584 A.2d 142 (1991), *citing Nicholson v. Unsatisfied Claim,* 265 Md. 453, 458, 290 A.2d 384 (1972).

█ The parties in *German II,* the instant litigation, do not dispute the finality of the first judgment, nor do they dispute the fact that a single issue is common to the two actions, i.e. whether Sgt. Warner was contributorily negligent in causing the accident. Rather, the crux of their argument focuses on whether privity exists between appellants and Sgt. Warner's employer, the Mayor & City Council of Ocean City. Recent Maryland caselaw indicates that an employment relationship alone can suffice to establish privity for purposes of res judicata. In *Deleon v. Slear,* 328 Md. 569, 616 A.2d 380 (1992), for example, the Court of Appeals barred a plaintiff from suing hospital nurses based on the claim of defamation because he previously had brought the same charges against their employer hospital. *Deleon,* 328 Md. at 581, 616 A.2d 380 ("We conclude that the nurses, by virtue of their employment relationship with the hospital, are in privity with the hospital for purposes of applying the doctrine of res judicata."). *See also Lake v. Jones,* 89 Md.App. 579, 598 A.2d 858 (1991)

(establishing the existence of privity between an injured party and her insurance company).

Other Maryland caselaw, however, indicates that there are other, more involved, aspects to the concept of privity. As the Court of Appeals has explained:

> [F]or the purpose of the application of the rule of *res judicata,* the term "parties" includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies.... So, where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.

*Ugast v. LaFontaine,* 189 Md. 227, 232–33, 55 A.2d 705 (1947) (citations omitted). *See also Dill v. Avery,* 305 Md. 206, 215, 502 A.2d 1051 (1986) (emphasizing plaintiffs' right of control in the previous proceedings in concluding that the identical parties requirement of res judicata had been satisfied).

█ In further defining the application of the concept of privity within the context of res judicata, we refer to the related procedural bar of collateral estoppel, in which this issue has been examined recently in greater depth. The doctrine of collateral estoppel is similar, but not identical, to that of res judicata.[2] One element they both share, however,

---

2. *See generally Esslinger v. Baltimore City,* 95 Md.App. 607, 622 A.2d 774, *cert. denied,* 331 Md. 479, 628 A.2d 1066 (1993) (comparing the two doctrines); *Prescott v. Coppage,* 266 Md. 562, 570, 296 A.2d 150 (1972) ("The doctrine of collateral estoppel bears a close relationship to *res judicata."*). The scope of res judicata is broad in that it covers "all matters that have been decided in the original suit [as well as] all matters which with propriety could have been litigated in the first suit;" however, its application is confined to those situations in which the court has reached a final judgment on the particular issue asserted in the second case. *Esslinger,* 95 Md.App. at 621, 622 A.2d 774, *quoting*

is the common requirement of privity. *See Subsequent Injury v. Ehrman,* 89 Md.App. 741, 758, 599 A.2d 875 (1992) ("For either [doctrine] to apply, the second action must be between the same parties or those in privity with them.") *quoting Klein v. Whitehead,* 40 Md.App. 1, 12, 389 A.2d 374, *cert. denied,* 283 Md. 734 (1978).

Maryland cases analyzing the concept of privity within the rules of collateral estoppel place great emphasis on the procedural rights of the party against whom the doctrine is to be invoked. *See generally, Leeds Federal v. Metcalf,* 332 Md. 107, 120, 630 A.2d 245 (1993) (barring a plaintiff from litigating a case because, in part, he had already been "given a fair opportunity to be heard on the issue" in a related case); *Caldor v. Bowden,* 330 Md. 632, 657, 625 A.2d 959 (1993) ("The appropriate focus is whether the parties against whom collateral estoppel is asserted 'have been afforded their day in court on those facts and issues.'") *quoting MPC, Inc. v. Kenny,* 279 Md. 29, 35, 367 A.2d 486 (1977); *Welsh v. Gerber Products,* 315 Md. 510, 555 A.2d 486 (1989) ("Conceptually, there will be instances in which a party who has had the benefit of a full and fair adjudication of an issue should be bound by that adjudication, even in a subsequent proceeding involving a different party."); *Pat Perusse Realty v. Lingo,* 249 Md. 33, 45, 238 A.2d 100 (1968) (recognizing plaintiff's prior "full day

---

*Rowland v. Harrison,* 320 Md. 223, 577 A.2d 51 (1990) (emphasis omitted). The doctrine of collateral estoppel, on the other hand, narrows the scope of relitigation to only those matters that *actually* have been litigated and decided, yet broadens the preclusive effect of the previous judgment by not requiring a final judgment on the particular claim asserted in the second trial. *Esslinger,* 95 Md.App. at 627, 622 A.2d 774. The formal elements of collateral estoppel are as follows:

 (1) the identity of parties;

 (2) actual litigation of an issue or fact of law;

 (3) essentialness of that determination to the final judgment; and

 (4) the appealability of that determination by the party against whom the issue preclusion is being asserted.

*Esslinger v. Baltimore City,* 95 Md.App. 607, 627, 622 A.2d 774 (1993) *citing Cassidy v. Bd. of Educ.,* 316 Md. 50, 62, 557 A.2d 227 (1989).

in court and full opportunity to win on its claim" in denying his second litigation attempt).

In discerning whether a party's procedural rights have been addressed adequately, a court may focus on the nature of the interests binding the two parties, and, correspondingly, whether they share the same incentive in their separate litigation attempts. *See generally Subsequent Injury v. Ehrman,* 89 Md.App. 741, 754, 599 A.2d 875 (1992) (classifying two parties as "not sufficiently identical in interest to regard [the first party] as representing all of the legal rights and defenses the [second party] may have against the claimant") *quoting Race Fork Coal Co. v. Turner,* 237 Va. 639, 379 S.E.2d 341, 343 (1989). This priority is reflected in the requirement of collateral estoppel that a second party cannot be covered by a previous decision unless he or she had an appropriate opportunity to appeal the first decision. *See Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 552–53, 555 A.2d 502 (1989) (ruling that a party could not be barred from bringing its case where he had been unable to appeal the prior decision); *Subsequent Injury v. Ehrman,* 89 Md.App. 741, 599 A.2d 875 (1992) (refusing to bar a second litigation attempt on the same subject matter partially because one of the parties had not participated in the first forum and could not have appealed therefrom).

Against this backdrop, we consider the Baltimore County Circuit Court's decision to bar *German II* based on the principles of res judicata. At first glance, the employment relationship that exists in the present litigation appears to mirror the situation found in *Deleon,* in which the employee was found to be in privity with the employer. Upon a closer reading, however, the two cases are distinguishable. In *Deleon,* a single plaintiff sued one defendant on charges of defamation, lost that suit, and then sued a second defendant on the same charges. In his role as plaintiff in his first case, Dr. Deleon employed a comprehensive litigation strategy that involved taking more than twenty depositions, producing lengthy memoranda, and filing numerous exhibits with the

courts. *Deleon,* 328 Md. at 588 n. 5, 616 A.2d 380 (citing *Deleon v. St. Joseph Hosp., Inc.,* 871 F.2d 1229, 1232 (4th Cir.1989). In recognition of the full panoply of due process rights exercised by the plaintiff, the *Deleon* Court ruled that the plaintiff had already "had the fullest and fairest opportunity to litigate his claim in the federal court" and denied his attempt to instigate a second trial. *Id.*

The situation of the parties in the instant case is inapposite to that in *Deleon.* Although Sgt. Warner, a plaintiff in *German II,* was a witness in *German I,* he did not have the same degree of control that Dr. Deleon was permitted to exercise in his litigation. As nonparties in *German I,* neither Sgt. Warner nor his wife [3] were permitted to take depositions, file pleadings or documents with the court, or appeal from any court's decision.

Moreover, there is a divergence of interests between Ocean City, which based its claim exclusively on damage done to its police car (Ocean City sued for $3,009.72 for its property loss), and the present appellants, who ground their case on personal damages not limited to the value of a car (the cumulative ad damnum clauses of their complaint sought $2.5 million). Thus, the interests of the two parties are simply not identical, and, correspondingly, they do not share the same incentives in their respective pursuits of litigation—a fact that may have played a role in Ocean City's failure to petition the Court of Appeals for a writ of certiorari in *German I.* Although Sgt. Warner was an employee of the plaintiff in *German I,* this relationship, standing alone, is simply insufficient to establish the existence of privity in the instant case for purposes of res judicata.

Our conclusion is consistent with that of the Supreme Court of Georgia, which faced a strikingly similar factual situation in *Norris v. Atlanta & West Point R.R. Co.,* 254 Ga. 684, 333 S.E.2d 835 (1985). Norris, an employee of Signal Delivery

---

3. We note, in any event, that Ms. Warner patently has no employment relationship with Ocean City.

Service, Inc. (SDSI), was driving a company delivery truck across railroad tracks when a train hit the vehicle. *Norris,* 333 S.E.2d at 836. A crew member of the train, injured in the accident, sued SDSI alone, alleging that its employee's negligence was the cause of his injury. *Id.* Norris was called as a witness in the course of this litigation and "testified fully on the issues of negligence." *Norris v. Atlanta & West Point R.R. Co.,* 174 Ga.App. 389, 330 S.E.2d 151, 152 (1985). At the conclusion of trial, the jury found that the accident and corresponding injuries were indeed the result of Norris' negligence, and, applying the doctrine of respondeat superior, ruled in favor of the crewman. *Id.*

Norris and his wife subsequently filed a joint complaint against the railroad for injuries to Norris and his wife's loss of consortium. *Id.* The railroad moved for summary judgment, relying on the doctrines of res judicata and collateral estoppel. *Id.* 330 S.E.2d at 151. The trial court granted summary judgment, and the Georgia intermediate court affirmed, ruling that the issue of Norris' negligence had been fully litigated in the first suit and finding no violation of the Norris's due process rights. *Id.* 330 S.E.2d at 152.

On further appeal, the Supreme Court of Georgia reversed. *Norris,* 333 S.E.2d at 838. As the court explained:

Although under certain circumstances the master or, more rarely, the servant, may claim the benefits of a prior adjudication in favor of the other ... the master or servant who has never had a day in court cannot be barred by a prior adjudication against the other. An agency or master-servant relationship does not ipso facto constitute privity for purposes of res judicata or estoppel by judgment.... In the present case Mr. and Mrs. Norris are not in privity with SDSI. Therefore, they cannot be barred from litigating their action against the railroad by res judicata or collateral estoppel even though the issue of Norris' negligence was present in the [previous] action.

*Id.* 333 S.E.2d at 837 (citations omitted). The court concluded that because the Norrises never had a proper opportunity to

litigate their claims, they could not be barred from proceeding with the second case and reversed the grant of summary judgment. *Id.* 333 S.E.2d at 838.

██ In conclusion, we note that while the common interests implicit in an employment relationship ordinarily would tend to bind employers and employees in privity for the purposes of res judicata, the facts of the case *sub judice* do not support such a holding. Rather, a court must examine whether each set of plaintiffs enjoyed the procedural protections to which they were entitled and if the purposes and effects of res judicata have been served. In the instant case, appellants, who were not parties in *German I,* were not afforded basic procedural rights available to the parties, including appellees, in that litigation. Although the underlying philosophy of res judicata places a premium on judicial economy, denying an effective day in court to parties whose interests were not adequately represented in the previous litigation would work a denial of due process.

██ Finally, appellees assert that the failure of Sgt. Warner and his wife to intervene in *German I* renders them bound by the results of that case. This contention is not consistent with the language of the Maryland Rules of intervention, which establish that a person seeking to intervene may be *permitted* to do so, but such a person is not under obligation to seek intervention. *See* Md.Rule 3–214(a) (1994) ("Upon timely motion, a person shall *be permitted* to intervene in an action. . . .") (emphasis added); Md.Rule 3–214(b) (1994) ("Upon timely motion a person may *be permitted* to intervene in an action. . . .") (emphasis added). Because Maryland law does not place an affirmative duty on appellants to intervene, we cannot penalize them for electing to litigate their claims in another appropriate forum.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.**