JOHN G. VORIS ET AL. *v.* PETER M. MOLINARO
(SC 18435)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Vertefeuille and Harper, Js.*

---

* This case originally was argued before a panel of this court consisting of Chief Justice Rogers and Justices Norcott, Palmer, Zarella, McLachlan and Vertefeuille. Thereafter, Justice Harper was added to the panel, and he has read the record and briefs and has listened to the recording of the oral argument.

Argued January 14—officially released November 22, 2011

*Paul L. Bollo*, for the appellant (named plaintiff).

*J. Kevin Golger*, for the appellee (defendant).

*Kathryn Calibey* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Jack G. Steigelfest* and *Rachel J. Fain* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Linda L. Morkan* and *Wystan M. Ackerman* filed a brief for the Insurance Association of Connecticut et al. as amici curiae.

*Opinion*

McLACHLAN, J. The dispositive issue in this appeal is whether a claim for loss of consortium is barred by the settlement of the underlying negligence claim.[1] We

---

[1] Following oral argument on January 14, 2011, the Connecticut Trial Lawyers Association, the Connecticut Defense Lawyers Association, the Insurance Association of Connecticut, the National Association of Mutual Insurance Companies and the American Insurance Association submitted amicus briefs in response to our invitation to do so.

conclude that it is. The plaintiff[2] John G. Voris appeals from the judgment of the trial court granting the motion to strike by the defendant, Peter M. Molinaro.[3] The plaintiff contends that: (1) a claim for loss of consortium may be maintained independently of the underlying injury claim; and (2) a settlement of the underlying injury claim does not bar the related claim for loss of consortium. We disagree, and affirm the judgment of the trial court.

The complaint alleges the following facts: On May 10, 2004, the plaintiff was driving his motor vehicle, while his wife, Joan Voris (Voris), rode in the passenger seat. The defendant, who was driving his motor vehicle, struck the plaintiff's vehicle on the passenger side. As a result of the collision, Voris sustained severe injuries to her back and spine. She has been bedridden for extended periods of time, unable to walk long distances, and unable to complete her household duties. She requires epidural/faucet block treatments for the pain from her injuries. In addition, the plaintiff sustained severe injuries to his neck, back and spine. He has been experiencing pain and has difficulty completing household chores. The plaintiff and Voris brought this action together, each asserting two counts—one for negligence, in connection with their direct injuries, and one for loss of consortium due to the other's injuries.

On September 8, 2008, Voris executed a release pursuant to a settlement agreement that she had entered into with the defendant. Consistent with that agreement, on January 30, 2009, she withdrew both of her claims against the defendant. On the same day, the plaintiff

[2] Joan Voris also is a plaintiff in this action, but she withdrew her claims against the defendant prior to trial pursuant to a settlement agreement. For convenience, all references to the plaintiff in this opinion are to John G. Voris.

[3] The plaintiff appealed from the decision of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

withdrew his negligence claim, leaving his claim for loss of consortium as the sole remaining count of the complaint. The trial court granted the defendant's motion to strike the remaining count, relying on *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494, 408 A.2d 260 (1979), to conclude that the plaintiff's loss of consortium claim was barred by the settlement of Voris' negligence claim.[4] The trial court rendered judgment for the defendant and this appeal followed.

The plaintiff contends that a loss of consortium claim is a separate cause of action that may be maintained independently of the direct injury claim on which it is based. The defendant responds that the consortium claim is derivative of the direct injury action and therefore is barred by settlement of that action. The defendant relies on our statement in *Hopson* that "because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement . . . ." Id. Contending that our statement in *Hopson* is dicta and lacks precedential value, the plaintiff urges us to rely on case law from other jurisdictions to conclude that the consortium claim survives the settlement of the predicate action. Because we conclude that our subsequent decisions that have consistently applied the principle that we first expressed in *Hopson* are controlling, legally binding precedent, we agree with the defendant and affirm the judgment of the trial court.

[4] The trial court did not issue a written memorandum of decision on the defendant's motion, but instead, handwrote a brief summary of the basis of its decision on the order granting the motion. The court then denied the plaintiff's motion to reargue, in which the plaintiff had argued that the court's cursory note did not clarify whether the court had considered the arguments and authorities relied on by the plaintiff in its objection to the motion to strike. In denying the motion, the court simply reiterated that *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494, controlled.

In *Hopson,* we reversed our long-standing rule, set forth in *Marri* v. *Stamford Street Railroad Co.*, 84 Conn. 9, 24, 78 A. 582 (1911), that had precluded the recognition of claims for loss of consortium. In overturning our prior precedent and articulating the new rule, we defined consortium as "encompassing the services of the wife, the financial support of the husband, and the variety of intangible relations which exist between spouses living together in marriage. [W.] Prosser, Torts (4th Ed. 1971) § 124, pp. 881–82. These intangible elements are generally described in terms of affection, society, companionship and sexual relations. . . . These intangibles have also been defined as the constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage." (Citation omitted; internal quotation marks omitted.) *Hopson* v. *St. Mary's Hospital,* supra, 176 Conn. 487. As we ordinarily do when we recognize a new cause of action, we outlined its contours, in light of our reconsideration of the relevant public policies. Id., 490–94. One of the public policy concerns that weighed against recognizing the cause of action was the risk of double recovery. Id., 492. We rejected that concern as a basis for not recognizing the new cause of action, in part because of our conclusion that a "consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Id., 494.

Although we subsequently have characterized that statement as dicta, we consistently have relied on it in deciding subsequent cases. In *Ladd* v. *Douglas Trucking Co.,* 203 Conn. 187, 190–91, 523 A.2d 1301 (1987), we concluded that in a wrongful death action a surviving spouse may recover for antemortem loss of consortium, but may not recover for postmortem loss of consortium. Id., 197. Relying both on *Hopson*'s characterization of

a loss of consortium action as derivative and on our statement in *Hopson* that a loss of consortium claim is barred by the settlement of the predicate cause of action, we rejected the plaintiff's contention that our decision in *Hopson* would support the recovery of damages for postmortem loss of consortium. Id., 195.

In *Jacoby* v. *Brinkerhoff*, 250 Conn. 86, 735 A.2d 347 (1999), we again relied on the principle first expressed in *Hopson*. In *Jacoby*, the plaintiff sought damages for loss of consortium in connection with his allegations that the defendant, a psychiatrist, had committed medical malpractice in treating the plaintiff's former wife. Id., 87. The plaintiff's former wife had not initiated an action on her own behalf and refused to join in the plaintiff's action. Id., 89. We rejected the plaintiff's claim that joinder should be excused because his former wife's refusal to join had rendered joinder impossible. Id., 90. We considered the question of whether joinder of the consortium claim with the predicate claim should be required, and found that question to be inextricably linked to the question of whether the settlement of a predicate action would bar the derivative consortium action.[5] Id., 91. We explained that the public policy concerns implicated by both questions are the same, namely, limiting the risk of multiple actions or double recoveries stemming from the same transaction. Id. We observed that we could "discern no viable distinction between precluding a consortium claim when the injured spouse has settled with the alleged tortfeasor and precluding it when the injured spouse, as in this case, has declined altogether to sue the alleged tortfeasor." Id. Both rules result from the derivative nature of

---

[5] Stating that "even if we were persuaded that the absence of joinder might be excusable sometimes," we were not so persuaded under the facts of *Jacoby*, and we left open the question of whether "joinder may be excused if intervening events have made it impossible . . . ." That question is not before us in this appeal. See generally 3 Restatement (Second), Torts § 693 (2) (1977).

a claim for loss of consortium. Id., 91–92. We concluded, therefore, that the dicta in *Hopson* regarding the settlement of the predicate claim functions as a *"roadblock to the plaintiff's claim for recovery . . . ."* (Emphasis added.) Id., 91.[6] Our consistent reliance in both *Ladd* and *Jacoby* on the principle articulated in *Hopson*— that the settlement of the predicate claim extinguishes the derivative claim for loss of consortium—makes clear that this rule is the governing law in Connecticut. Therefore, the trial court properly granted the defendant's motion to strike in the present case.[7]

---

[6] Although dicta is not binding precedent; see, e.g., *State* v. *DeJesus*, 288 Conn. 418, 454 n.23, 953 A.2d 45 (2008); we may look to dicta as persuasive authority, and, by relying on it in subsequent decisions, convert it to binding precedent. That is precisely what happened to the *Hopson* dicta. "[Dicta] includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . [I]t is not [dicta] [however] when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009). To support our conclusions in both *Ladd* and *Jacoby*, we relied on the principle articulated in *Hopson*, that the settlement of the predicate action precludes an action for loss of consortium by the spouse. In *Jacoby* in particular, we intentionally took up and discussed the principle that we had articulated in *Hopson*, and relied on it as an essential part of our rationale. At that point, the principle ceased to be dicta.

[7] Because we conclude that our later decisions that cite to and rely on the principle articulated in *Hopson* are binding, it is unnecessary for us to address the plaintiff's reliance on case law from other jurisdictions as interpretive aids for understanding the import of our statement in *Hopson*. As we have explained in this opinion, we already have interpreted that statement as setting forth a legally binding rule of law—termination of the predicate action by settlement bars the derivative consortium claim.

For that same reason, the plaintiff's reliance on the Appellate Court's decision in *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 783 A.2d 36, cert. denied, 258 Conn. 938, 786 A.2d 426 (2001), is unavailing. Moreover, even if we were to look to *Musorofiti* as persuasive authority, that decision is consistent with and relies on our existing precedent in its analysis. In *Musorofiti*, the Appellate Court reversed the judgment of the trial court in favor of the defendants on the plaintiff wife's loss of consortium claim, concluding that the trial court improperly had refused to instruct the jury on the claim. Id., 367. The court rejected the wife's claim, however, that, because of the nature

Although we repeatedly have articulated and relied on the principle that the settlement of the underlying injury claim bars the derivative action for loss of consortium, we recognize that neither *Hopson, Jacoby,* nor *Ladd* had a procedural posture identical to the present one. Accordingly, we take this opportunity to articulate the strong policy reasons that support the application of this rule to claims such as the plaintiff's. The same rationale that mandates the joinder of loss of consortium claims with the claims of the directly injured party also should apply to bar a claim for loss of consortium once the predicate action has been settled.[8]

First, when the claims are not resolved together, there is a greater probability of overlapping damages awards.

of the two claims as " 'inextricably intertwined,' " the proper remedy was a retrial on both her loss of consortium claim and her husband's predicate claim, and instead determined that the remand should be limited to a hearing in damages on the wife's claim for loss of consortium. Id., 369. In so concluding, *Musorofiti* recognized the derivative nature of a claim for loss of consortium and also recognized our established rule that "if an adverse judgment or a settlement bars the injured spouse's cause of action, any claim for loss of consortium necessarily fails as well." Id., 376, citing *Hopson* v. *St. Mary's Hospital,* supra, 176 Conn. 494. The court in *Musorofiti* further stated: "A new trial in the present case solely on the issue of damages as to the loss of consortium claim does not implicate any of the concerns for which courts have determined that the underlying impaired spouse's claim must accompany the deprived spouse's claim. The defendants presented no evidence of comparative responsibility. The . . . husband neither lost in his action nor settled his claim, so neither settlement nor adverse judgment bars the . . . wife's claim. Furthermore, no reason exists for concern that the jury will improperly award damages to the . . . wife for the husband's injuries or vice versa." *Musorofiti* v. *Vlcek,* supra, 381. Accordingly, *Musorofiti* is not only consistent with our holding today, it provides persuasive support for our conclusion that the rule we apply is an established one, supported by our legal precedent.

[8] The applicable Restatement (Second) rule requires the joinder of a loss of consortium claim with the underlying tort claim "[u]nless it is not possible to do so"; 3 Restatement (Second), Torts § 693 (2), p. 495 (1977); for example, when the injured spouse has "settled and released the claim for bodily harm without the knowledge of the deprived spouse." Id., comment (g), p. 498. In the present matter, it is clear that the plaintiff was aware of Voris' settlement of her claims.

The concept of marital consortium encompasses services, support "and the variety of intangible relations which exist between spouses living together in marriage." *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 487. Consortium has been described variously as "affection, society, companionship and sexual relations" or "the constellation of companionship, dependence, reliance, affection, sharing and aid . . . ." (Internal quotation marks omitted.) Id. Because the experiences comprising consortium are not specific to either party to a marriage, "damages to a marital relationship are frequently inextricably intertwined with the harm sustained by the injured spouse. . . . [M]arital interests are in reality . . . interdependent [and] injury to these interests is . . . essentially incapable of separate evaluation as to the husband and wife." (Internal quotation marks omitted.) *Oaks* v. *Connors*, 339 Md. 24, 37, 660 A.2d 423 (1995). Given that interdependence, "there is some risk that a jury hearing the [injured spouse's] claim will consciously or not, include something in the verdict for the [deprived spouse's] loss as well, and vice versa." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 125, p. 933. In *Hopson*, we recognized this danger and, therefore, acknowledged the wisdom of trying both claims together "before a single trier of fact." *Hopson* v. *St. Mary's Hospital*, supra, 494. Allowing a loss of consortium claim to proceed alone following the settlement of the injured spouse's claims would ignore this important safeguard.[9]

Second, "[i]t is inherent in the nature of a derivative claim [such as loss of consortium] that the scope of the claim is defined by the injury done to the principal." *Jacoby* v. *Brinkerhoff*, supra, 250 Conn. 93. Accordingly,

---

[9] The risk of overlapping awards is exacerbated in cases such as the present one, in which the injured spouse's settlement consists of an undifferentiated lump sum award, making it impossible to discern the purposes at which the compensation may have been directed.

the loss of consortium claim "is lost, diminished or barred when the injured person's claim is so affected." 2 D. Dobbs, Law of Remedies (2d Ed. 1993) § 8.1 (5), p. 401. When the claims become untethered from each other, inconsistent outcomes may occur. Thus, the claims are not necessarily resolved on the basis of the sequela of the principal's injury.

Third, requiring both claims to be resolved simultaneously promotes efficiency and conserves judicial resources by protecting against the repeated litigation of the same underlying issues. *Buckley* v. *National Freight, Inc.*, 220 App. Div. 2d 155, 158, 644 N.Y.S.2d 809 (1996), aff'd, 90 N.Y.2d 210, 681 N.E.2d 1287, 659 N.Y.S.2d 841 (1997). This is because, "[i]n order to subject a defendant to liability to a deprived spouse for illness or bodily harm done to the impaired spouse, all of the elements of a tort action in the impaired spouse must [be proven to] exist, including the tortious conduct of the tortfeasor, the resulting harm to the impaired spouse and the latter's freedom from such fault as would bar a recovery by him or her, as for example, contributory negligence." 3 Restatement (Second), Torts § 693, comment (e) (1977). By negotiating and settling their claims, both an injured party and a tortfeasor hope to avoid the expense and uncertainty of litigating the tort action at trial and to resolve their dispute once and for all. Allowing the loss of consortium claim to proceed following the settlement of the injured party's claim undermines these goals.[10] Additionally,

[10] There may be cases in which spouses are unable to agree on the wisdom of accepting an offer of settlement on the injured party's claim if no acceptable offer to settle the loss of consortium claim is included as part of the offer. It is true that, in such cases, the injured party may unilaterally agree to settlement of his or her claim, thereby extinguishing the deprived party's right to pursue recovery on the loss of consortium claim. Although this potential outcome is not ideal, it is preferable to an outcome that could result from permitting the consortium claim to remain viable. Namely, a tortfeasor who otherwise would agree to a settlement with a willing injured party would decline to do so because the benefits of settlement—finality and the avoidance of trial—would be eliminated by the potential, continued

because only a single " 'per person' " liability insurance policy limit may be available to satisfy both the direct injury and the accompanying loss of consortium claim; see *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 312–13, 524 A.2d 641 (1987); fairness dictates that both claims should be evaluated and resolved together. Specifically, if, as happened in *Izzo*, the insurance carrier settled for the full per person limit with the primary plaintiff, the insurance policy would provide no coverage for the consortium claim.[11] If we were to adopt the plaintiff's advocated rule and allow a consortium claim to proceed following the settlement of the predicate action, whenever a claim has been settled for the per person limit with the directly injured person, an insured would be left without coverage for the remaining consortium claim.[12]

The judgment is affirmed.

In this opinion NORCOTT, ZARELLA and HARPER, Js., concurred.

ROGERS, C. J., concurring. I agree with the majority that a claim for loss of consortium, being derivative in nature, is barred by the settlement of the directly injured party's claim. I write separately because I disagree that

pursuit of the consortium claim. In other words, the deprived spouse effectively could force the injured spouse to continue participating in litigation against his or her will, perhaps requiring him or her to be deposed, submit to medical examinations and testify at trial. When the interests of the directly injured spouse and the deprived spouse diverge, the wishes of the injured spouse, who may be in need of the immediate financial relief that a settlement offers, ought to control. See, e.g., *Pugh* v. *Super Fresh Food Markets, Inc.*, 640 F. Sup. 1306, 1308 (E.D. Pa. 1986).

[11] The question of whether the settlement of the predicate claim barred the consortium claim was not before us in *Izzo*. See *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 308 n.3 ("[a]s part of the settlement, the defendants waived any argument that the settlement of the claim [of the plaintiff's wife] acted to extinguish the loss of consortium claim of the plaintiff").

[12] We do not speculate as to whether a defendant would have any claim against his carrier for settling the direct injury claim.

this issue, which has not been presented squarely by any previous appeal, necessarily has been conclusively resolved by our past decisions. As detailed by the majority and dissenting opinions, our past jurisprudence articulating the rule in question does not include a case with a procedural posture identical to the present one, which places the propriety of the rule directly at issue. See *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494–95, 408 A.2d 260 (1979) (recognizing, as general matter, viability of claim for loss of consortium); see also *Jacoby* v. *Brinkerhoff*, 250 Conn. 86, 93–95, 735 A.2d 347 (1999) (disallowing loss of consortium claim when purportedly injured spouse had refused to pursue any claim herself); *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 195, 523 A.2d 1031 (1987) (rejecting claim for post-mortem loss of consortium pursuant to either wrongful death statute or common law). Furthermore, as explained by the dissent, the holdings of *Jacoby* and *Ladd* appear to rest on multiple considerations, and not merely the quoted language from *Hopson.*

In light of the foregoing, I believe that we should decide this appeal solely on the basis of the strong policy reasons enumerated in the majority opinion. Accordingly, I agree to that extent with the reasoning of that opinion, and I concur in the conclusion that the judgment of the trial court granting the defendant's motion to strike should be affirmed.

PALMER, J., with whom VERTEFEUILLE, J., joins, dissenting. The majority concludes that the loss of consortium claim of the named plaintiff, John G. Voris, against the defendant, Peter M. Molinaro, is barred because the plaintiff's wife, Joan Voris (Voris), settled her underlying negligence claim against the defendant. I would conclude that, under the circumstances of the present case, the plaintiff's lack of consortium claim should not be barred. Accordingly, I respectfully dissent.

Although the majority opinion sets forth most of the pertinent facts and procedural history, certain of them bear emphasis and elaboration. The plaintiff brought his claim for loss of consortium, as well as a bodily injury claim, in the same complaint in which Voris asserted her claims for bodily injury and loss of consortium resulting from the defendant's negligence. The defendant subsequently agreed to pay Voris the sum of $50,000 in exchange for the release of her claims. The settlement agreement, which had been prepared by the defendant, specified that the defendant's "payment is not to be construed as an admission of liability" on the underlying negligence claims. The agreement contained no language, however, that could be construed as an admission by Voris that the defendant was not legally responsible for her injuries or that would prevent her from testifying with regard to the plaintiff's loss of consortium claim. The plaintiff did not sign the settlement agreement and the agreement made no reference to the plaintiff's bodily injury and loss of consortium claims.

Following the defendant's settlement of Voris' claims, the defendant filed a motion to strike the plaintiff's claim for loss of consortium on the ground that it was barred by this court's decision in *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494, 408 A.2d 260 (1979), in which we stated that a "consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." The trial court granted the motion to strike. Thereafter, the plaintiff withdrew his bodily injury claim and filed this appeal.

The majority concludes that the trial court properly granted the motion to strike because, under *Hopson*, a spouse's loss of consortium claim cannot survive the settlement of the other spouse's underlying personal injury claim. In *Hopson*, this court overturned its long-standing precedent and concluded that claims for loss

of consortium are cognizable in this state. Id., 494–96. We concluded that the "potential for improper verdicts" did not militate against adopting this cause of action because, for among other reasons, "a consortium action is derivative of the injured spouse's cause of action [and therefore] would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Id., 494. Although I agree with the majority that it is difficult to characterize this statement as mere dictum,[1] I would conclude that the statement was overly broad and should be overruled to the extent that it applies to cases, like the present case, in which the defendant was on notice of the loss of consortium claim when the underlying claim was settled.

First, it is significant that our statement in *Hopson* followed a thorough examination of the reasons why recognizing a cause of action for loss of consortium was appropriate, including a discussion indicating that joinder of the two spouses' claims should be required so as to avoid the possibility of inconsistent or duplicative verdicts and awards, and explaining that joinder of claims and proper jury instructions are sufficient to minimize potential for improper verdicts. Id. As I discuss further hereinafter, the risk of overlapping and

---

[1] "Dictum includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . [I]t is not dictum [however] when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009). Although our statement in *Hopson* that a loss of consortium claim is barred when the injured spouse has settled the underlying claim was dictum in the sense that the plaintiff's spouse in *Hopson* had not settled the underlying claim, the statement was nevertheless germane to the outcome of the case because it was made in connection with a public policy analysis supporting our conclusion that loss of consortium claims are cognizable in this state.

inconsistent recoveries arises when the cases are not joined because in such circumstances, the parties may be unaware of the litigation and settlement status of the spouses' claims. Joinder ensures that the parties know about the status of the claims, and that knowledge, along with proper jury instructions in cases that proceed to trial, eliminates the risk of duplicative or otherwise inappropriate awards. Thus, as we suggested in *Hopson*, joinder is the key to avoiding such potentially problematic results.

Furthermore, this court's statement in *Hopson* that *all* loss of consortium claims are barred if the underlying claim by the injured spouse has been settled is not supported by the cases on which this court relied to support it. See id., citing *Millington* v. *Southeastern Elevator Co.*, 22 N.Y.2d 498, 239 N.E.2d 897, 293 N.Y.S.2d 305 (1968), and *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 302 N.E.2d 555 (1973). In *Millington* v. *Southeastern Elevator Co.*, supra, 507, the court noted that "there are practical difficulties in allowing a consortium action, *especially with respect to retrospective application.*" (Emphasis added.) It was with respect to these difficulties with retroactive application that the court in *Millington* commented that, "[w]here . . . the [injured spouse's] cause of action has been terminated either by judgment, settlement or otherwise, that should operate to bar the wife's cause of action for consortium." Id., 508. Similarly, the court in *Diaz* held that "where the claim for the physical injuries has been concluded by judgment or settlement or the running of limitations *prior to the coming down of this opinion,* no action for loss of consortium *thereafter* instituted arising from the same incident will be allowed . . . ." (Emphasis added.) *Diaz* v. *Eli Lilly & Co.*, supra, 167.[2] Thus, *Mil-*

---

[2] See also *Swartz* v. *United States Steel Corp.*, 293 Ala. 439, 445–46, 304 So. 2d 881 (1974) ("a spouse will not be allowed to maintain an action for loss of consortium . . . when the other spouse has received damages from the negligent third party for such loss, whether by settlement, or judgment, made or rendered *prior to the effective date of a decision allowing a wife*

*lington* and *Diaz* were concerned with difficulties arising out of the retroactive application of the new cause of action for loss of consortium, and do not stand for the broad proposition that the settlement of the injured spouse's underlying claim extinguishes a loss of consortium claim in all cases.

Indeed, almost all courts that have considered the issue have held that, as a general rule, the settlement or contractual waiver of the injured spouse's underlying claim does *not* bar a subsequent loss of consortium claim. See *Jenkins* v. *State Farm Mutual Automobile Ins. Co.*, 30 So. 3d 414, 418–19 (Ala. App. 2008) (when injured spouse has settled claim, loss of consortium claim may be pursued independently); *Letasky* v. *United States*, 783 F. Sup. 451, 452 (D. Alaska 1992) (under Alaska law, settlement of injured spouse's claim excuses requirement that loss of consortium claim be joined with claim); *Crouch* v. *West*, 29 Colo. App. 72, 75, 477 P.2d 805 (1970) (settlement of injured spouse's claim did not bar loss of consortium claim); *Jones* v. *Elliott*, 551 A.2d 62, 65 (Del. 1988) (injured spouse cannot extinguish loss of consortium claim of other spouse by settling claim); *Ryter* v. *Brennan*, 291 So. 2d 55, 57

*a cause of action for loss of her husband's consortium*" [emphasis added]); *Rodriguez* v. *Bethlehem Steel Corp.*, 12 Cal. 3d 382, 408, 525 P.2d 669, 115 Cal. Rptr. 765 (1974) ("a spouse will not be permitted to initiate an action for loss of consortium . . . when the action of the other spouse for the negligent or intentional injury giving rise to such loss was concluded by settlement or judgment *prior to the effective date of this decision*" [emphasis added]); *Deems* v. *Western Maryland Railway Co.*, 247 Md. 95, 115, 231 A.2d 514 (1967) (new rule allowing wives to bring loss of consortium claims "shall apply to all future and pending actions, except for claims by husbands or wives which, *prior to the date of the filing of this opinion*, have been effectively barred by settlement, judgment, the [s]tatute of [l]imitations, or otherwise" [emphasis added]); *Ekalo* v. *Constructive Service Corp. of America*, 46 N.J. 82, 95, 215 A.2d 1 (1965) (claims under new rule allowing wives to bring loss of consortium claim were barred when underlying "claims by husbands for physical injuries caused by alleged tortfeasors have *heretofore* been effectively barred by settlement, judgment or otherwise" [emphasis added]).

(Fla. App.) (husband's execution of release of all claims arising out of accident did not bar wife's subsequent loss of consortium claim), cert. denied, 297 So. 2d 836 (Fla. 1974); *Deese* v. *Parks*, 157 Ga. App. 116, 118–19, 276 S.E.2d 269 (1981) (injured wife's contractual waiver of right to bring action did not bar husband's loss of consortium claim);[3] *Brown* v. *Metzger*, 104 Ill. 2d 30, 39, 470 N.E.2d 302 (1984) (settlement of injured spouse's claim did not bar loss of consortium claim); *Rosander* v. *Copco Steel & Engineering Co.*, 429 N.E.2d 990, 992 (Ind. App. 1982) (injured spouse's settlement and release of workers' compensation claim did not bar plaintiff's loss of consortium claim); *Huber* v. *Hovey*, 501 N.W.2d 53, 57 (Iowa 1993) (husband's contractual release of liability did not bar wife's loss of consortium claim); *Kotsiris* v. *Ling*, 451 S.W.2d 411, 413 (Ky. 1970) (settlement of injured spouse's claim did not bar subsequent loss of consortium claim); *Leray* v. *Nissan Motor Corp. in U.S.A.*, 950 So. 2d 707, 711 (La. App. 2006) (settlement of injured daughter's claims did not bar subsequent loss of consortium claim by parents); *Gillespie* v. *Papale*, 541 F. Supp. 1042, 1046–47 (D. Mass. 1982) (under Massachusetts law, release of injured spouse's claim did not bar subsequent claim for loss of consortium); *Steele* v. *Botticello*, 21 A.3d 1023, 1028 (Me. 2011) (release of underlying claim for physical injuries does

---

[3] But see *Hall* v. *Gardens Services, Inc.*, 174 Ga. App. 856, 858, 332 S.E.2d 3 (1985) (wife's contractual release of liability barred husband's loss of consortium claim), citing *Stone Mountain Memorial Assn.* v. *Herrington*, 225 Ga. 746, 749, 171 S.E.2d 521 (1969) (when wife's bodily injury claim was barred by statute providing that landowners who allow use of land for recreational purposes owe no duty of care to persons who use land for that purpose, husband's loss of consortium claim was also barred), and *Norris* v. *Atlanta & West Point Railroad Co.*, 174 Ga. App. 389, 391–93, 330 S.E.2d 151 (when husband's bodily injury claim was barred by principles of collateral estoppel, wife's loss of consortium claim was also barred), rev'd on other grounds, 254 Ga. 684, 686, 333 S.E.2d 835 (1985) (holding that husband's claim was not barred). For the reasons stated in this dissent, I do not believe that the cases cited in *Hall* support the holding of that case. Accordingly, I do not find the case persuasive.

not preclude loss of consortium claim when plaintiff was not party to settlement agreement and agreement did not cover plaintiff's claims); *Oldani* v. *Lieberman*, 144 Mich. App. 642, 650, 375 N.W.2d 778 (1985) (settlement of injured spouse's claim did not bar subsequent loss of consortium claim); *Huffer* v. *Kozitza*, 375 N.W.2d 480, 482 (Minn. 1985) (injured spouse's release of personal injury claim did not bar plaintiff's loss of consortium claim); *Burke* v. *L & J Food & Liquor, Inc.*, 945 S.W.2d 662, 663–64 (Mo. App. 1997) (injured spouse's settlement of workers' compensation claim did not bar loss of consortium claim when plaintiff did not sign release and language of release did not expressly bar loss of consortium claim); *Simms* v. *Vicorp Restaurants, Inc.*, 272 Neb. 744, 748–49, 725 N.W.2d 406 (2006) (settlement of injured spouse's claim did not bar subsequent loss of consortium claim); *Kibble* v. *Weeks Dredging & Construction Co.*, 161 N.J. 178, 191, 735 A.2d 1142 (1999) ("a spouse's [loss of consortium] claim survives the release of his or her spouse's personal injury claim"); *Bowen* v. *Kil-Kare, Inc.*, 63 Ohio St. 3d 84, 92, 585 N.E.2d 384 (1992) (loss of consortium claim cannot be defeated by contractual release of liability that was not signed by spouse who was entitled to bring claim); *Manzitti* v. *Amsler*, 379 Pa. Super. 454, 462, 550 A.2d 537 (1988) ("a claim for loss of consortium accrues to the non-injured spouse alone and is not barred by the settlement and release of the injured spouse's personal injury claim"), aff'd, 524 Pa. 587, 574 A.2d 601 (1990); *Whittlesey* v. *Miller*, 572 S.W.2d 665, 669 (Tex. 1978) (when wife of injured husband did not enter into agreement settling underlying claim and language of release could not be construed to apply to her loss of consortium claim, settlement of underlying claim did not bar loss of consortium claim).[4] These cases are predicated on the prin-

---

[4] But see *Conradt* v. *Four Star Promotions, Inc.*, 45 Wn. App. 847, 853, 728 P.2d 617 (1986). In *Conradt*, the court concluded that the husband's contractual release and waiver of liability for bodily injury barred the wife's

loss of consortium claim because "[t]here can be no actionable negligence where no duty was owed to the person injured." Id. The court reasoned that, "[e]ven though loss of consortium has been held a separate, independent, nonderivative action of the deprived spouse and not affected by the negligence of the impaired spouse . . . nevertheless, an element of this cause of action is the tort committed against the impaired spouse." (Citation omitted; internal quotation marks omitted.) Id. The court also noted that "a consortium claim by a lone spouse will not be recognized where the underlying tort has been prohibited or abolished." Id. As the cases cited in this dissenting opinion indicate, however, it does not follow from the fact that the injured spouse has "abandoned the right to complain"; id.; that that spouse has waived the other spouse's right to complain. Indeed, a person has no right to waive another person's right to seek compensation for an injury without the knowledge and consent of that person. See, e.g., *Burke* v. *L & J Food & Liquor, Inc.*, supra, 945 S.W.2d 664 ("[t]he injured person is not the agent of his spouse simply because of the marital relationship, and he, therefore, has no power to bind his spouse by an agreement to which the spouse was not a party"). Moreover, the fact that a loss of consortium claim is barred if the injured spouse has no cognizable tort claim does not support the conclusion that a loss of consortium claim is barred if the spouse has settled a cognizable tort claim. I therefore am not persuaded by the court's analysis and conclusion in *Conradt*.

The defendant also cites *Pugh* v. *Super Fresh Food Markets, Inc.*, 640 F. Sup. 1306 (E.D. Pa. 1986), for the proposition that the settlement of the injured spouse's underlying claim bars a loss of consortium claim. In *Pugh*, the injured wife entered into a settlement agreement with the defendants, but the husband refused to sign the agreement releasing his loss of consortium claim. Id., 1307. The defendants then filed a motion to enforce the settlement agreement as to both the husband and the wife. Id. The court held that, because the attorney representing both the husband and the wife had had authority to enter into the settlement agreement, and an agreement to settle is enforceable even if a party subsequently has a change of heart, the settlement agreement was enforceable despite the husband's subsequent refusal to sign it. Id., 1308. The court further held that the loss of consortium claim was barred under Pennsylvania law because the husband's claims were derivative of the wife's claims, and the wife's claims had been extinguished by the settlement agreement. Id., citing *Hooten* v. *Pennsylvania College of Optometry*, 601 F. Sup. 1151, 1155–56 (E.D. Pa. 1984) (when wife's intentional infliction of emotional distress claim was dismissed for failure to state claim upon which relief could be granted, husband's derivative loss of consortium claim also must be dismissed), and *Little* v. *Jarvis*, 219 Pa. Super. 156, 160–62, 280 A.2d 617 (1971) (when jury awarded damages to husband for expenses that he had incurred in caring for injured wife, jury's failure to award damages to wife for pain, suffering and inconvenience was inconsistent verdict because husband's claims were derivative). Neither *Hooten* nor *Little* supports the general proposition that the settlement of the injured spouse's underlying claim bars a loss of consortium claim. Indeed, as I have indicated, the Superior Court of Pennsylvania held after the District Court's decision in *Pugh* that the settlement of an injured spouse's claim does not

ciple that, although a loss of consortium claim is derivative of the injured spouse's claim in the sense that it depends on proof that the defendant could be found legally responsible for the injuries to the injured spouse, it is not derivative in the sense that the injured spouse must have a legally enforceable claim against the defendant when the loss of consortium claim is asserted.[5]

bar a loss of consortium claim. *Manzitti* v. *Amsler*, supra, 379 Pa. Super. 464. Moreover, because the court's conclusion in *Pugh* was dictum, the case has little, if any, persuasive value.

[5] See *Jenkins* v. *State Farm Mutual Automobile Ins. Co.*, supra, 30 So. 3d 418–19 (loss of consortium claim is derivative of injured spouse's claim, but is separate property right and may be pursued independently); *Jones* v. *Elliott*, supra, 551 A.2d 64–65 (loss of consortium claim is derivative only in sense that defendant's liability to injured spouse must be established); *Leray* v. *Nissan Motor Corp. in U.S.A.*, supra, 950 So. 2d 711 ("although the claim of loss of consortium is derivative of the primary victim's injuries, the claim is not derivative of the victim's ability to assert a claim"); *Steele* v. *Botticello*, supra, 21 A.3d 1027 ("[a] loss of consortium is an original injury that, on one hand, is independent because it is unique to one spouse, but on the other hand, is derivative of the injury to the other spouse"); *Burke* v. *L & J Food & Liquor, Inc.*, supra, 945 S.W.2d 664 ("[a] consortium claim is a separate, distinct, and personal legal claim, and is derivative only in the sense that it must be occasioned by a spouse's injury"); *Simms* v. *Vicorp Restaurants, Inc.*, supra, 272 Neb. 748 ("[a]lthough a loss of consortium claim derives from the harm suffered by the injured spouse . . . it remains a personal legal claim which is separate and distinct from those claims belonging to the injured spouse" [citation omitted]); *Kibble* v. *Weeks Dredging & Construction Co.*, supra, 161 N.J. 190 ("[a]lthough a [loss of consortium] claim is derivative of the injured spouse's personal injury cause of action . . . it is also independent, as the damages which may be awarded to the spouse pursuant to the [loss of consortium] claim are clearly different from the damages which may be awarded to the spouse suffering the direct injury" [citation omitted; internal quotation marks omitted]); *Bowen* v. *Kil-Kare, Inc.*, supra, 63 Ohio St. 3d 92–93 (although "claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury," action for loss of consortium is separate and distinct cause of action); *Manzitti* v. *Amsler*, supra, 379 Pa. Super. 461–62 (loss of consortium claim is derivative because it arises from impact of injured spouse's injuries on other spouse, but also is independent cause of action); *Whittlesey* v. *Miller*, supra, 572 S.W.2d 669 ("Each spouse recovers for the losses peculiar to the injury sustained by each of them. On the one hand, the impaired spouse recovers for those distinct damages arising out of the direct physical injuries. On the other hand, the recovery for the loss of consortium by the

It is true that this court and the Appellate Court have repeatedly stated that loss of consortium claims are derivative in nature. See *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555–56, 562 A.2d 1100 (1989) ("the derivative [loss of consortium] action is dependent upon the legal existence of the predicate action, i.e., that action which can be brought on behalf of the injured spouse himself or herself"); *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 312, 524 A.2d 641 (1987) ("[l]oss of consortium, although a separate cause of action, is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse"); *Wesson* v. *Milford*, 5 Conn. App. 369, 374, 498 A.2d 505 ("[i]t is crystal clear . . . that in Connecticut a consortium action is derivative of the injured spouse's cause of action"), cert. denied, 197 Conn. 817, 500 A.2d 1337 (1985). None of these cases, however, addressed the question before us in the present case or, for that matter, explained fully the meaning of the statement that consortium claims are "derivative." In *Champagne*, this court merely concluded that, "[w]here the injured spouse is found negligent in the predicate action, that spouse is proscribed from recovering damages to the extent of such negligence. In like manner, the spouse bringing the derivative consortium action is proscribed from recovering damages to the extent of the injured spouse's negligence." *Champagne* v. *Raybestos-Manhattan, Inc.*, supra, 556. In other words, when the defendant is not responsible for the full extent of the injuries to the injured spouse, the defendant cannot be found fully liable for the loss of consortium damages. Thus, *Champagne* merely stands for the proposition that loss

deprived spouse is predicated on separate and equally distinct damages to the emotional interests involved."); see also *Rosander* v. *Copco Steel & Engineering Co.*, supra, 429 N.E.2d 991 (although "a claim for loss of consortium is derivative in that without an injury to one spouse, the other spouse would have no action," injured spouse cannot waive other spouse's right to loss of consortium damages).

of consortium claims are derivative in the sense that they are dependent on proof of the defendant's responsibility for the bodily injury to the injured spouse, a proposition that is not in dispute in the present case.

In *Izzo*, this court recognized that, because a loss of consortium claim "arises out of the bodily injury to the spouse who can no longer perform the spousal functions"; *Izzo* v. *Colonial Penn Ins. Co.*, supra, 203 Conn. 312; and because "the plaintiff would not have a claim under this policy for damages for loss of consortium but for the bodily injury his wife sustained"; id.; the loss of consortium claim comes within an insurance policy's per person limit for bodily injury to the injured spouse. Id. Accordingly, *Izzo*, like *Champagne*, merely provides that a loss of consortium claim is derivative in the sense that it arises from the other spouse's bodily injury claim.

Finally, the Appellate Court in *Wesson*, after observing that the Workers' Compensation Act, General Statutes § 31-275 et seq., provides the exclusive remedy for injuries incurred by employees in the workplace; *Wesson* v. *Milford*, supra, 5 Conn. App. 372; held that "[t]here is no logical reason why the legislature in 1913 could not have intended to abolish prospective common law derivative causes of action, such as actions for loss of consortium, not then recognized in Connecticut." Id., 375–76. Accordingly, the court's statement that "the plaintiff's position that the injury suffered by [her] was a wrong independent of the injury to the husband cannot be maintained"; id., 375; was dicta. Even if loss of consortium claims are independent from bodily injury claims, they are barred when the bodily injury was incurred by an employee in the workplace because they were abolished by statute in that context.

The cases that allow a loss of consortium claim even though the underlying claim of the injured spouse has

been settled or waived also implicitly recognize that, contrary to this court's suggestion in *Hopson*, barring a loss of consortium claim when the underlying claim has been settled is not required to prevent inconsistent verdicts or double recoveries. See *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494. Unlike a judgment for the defendant on the merits, a settlement ordinarily does not entail a legal or factual determination that the defendant was not responsible for the injured spouse's injuries. Accordingly, allowing a loss of consortium claim when the underlying claim has been settled does not run the risk of inconsistent legal or factual findings, especially when the claims have been joined and the parties are fully aware of the status of those claims. Similarly, such a rule does not require the defendant "to defend against the same basic claim twice or thrice over"; *Desjarlais* v. *USAA Ins. Co.*, 824 A.2d 1272, 1278 (R.I. 2003) (loss of consortium claim must be joined to underlying claim to avoid duplicative litigation); because the underlying claim has never been litigated.[6] In addition, when the defendant is aware of the status of the pending loss of consortium claim at the time that the underlying claim is settled, there is little or no risk of double recovery if a loss of consortium claim survives the settlement because the defendant can either refuse to settle the underlying claim separately or ensure that any settlement does not include compensation for any damages that might be sought in a loss of consortium

---

[6] I recognize that the underlying bodily injury claim will have to be tried within the context of the loss of consortium claim and that there may be cases in which this causes some difficulty because the injured spouse may not be cooperative. As the amicus Connecticut Defense Lawyers Association maintains, if the injured spouse settles the bodily injury claim and refuses to cooperate with the other spouse in litigating the loss of consortium claim, the other spouse may be unable to obtain the medical records and other evidence necessary to prove the underlying bodily injury. I do not agree, however, that the fact that loss of consortium *plaintiffs* may face difficulties in trying their claims when the underlying claim has been settled justifies barring their claims as a matter of law.

action.[7] See, e.g., *Steele* v. *Botticello*, supra, 21 A.3d 1028 (allowing loss of consortium claim when underlying claim has been settled does not create risk of double recovery).

Accordingly, I would conclude that the settlement of an injured spouse's underlying claim does not, in and of itself, extinguish a loss of consortium claim. Although loss of consortium claims ordinarily should be joined to the underlying claim in order to avoid duplicative litigation, inconsistent verdicts and double recoveries,[8]

---

[7] Although damages for loss of consortium are entirely separate and distinct from damages for physical injury, it can sometimes be difficult to draw a clear line between them. See, e.g., *Huffer* v. *Kozitza*, supra, 375 N.W.2d 482 ("Consortium involves the mutual and reciprocal privileges and duties of the marriage relationship. To ask the trier of fact to assess each marital partner's share of this mutual loss in separate trials, rather than in one trial, invites needless duplicate litigation. But more importantly, separate trials provide an inaccurate and incomplete portrayal of the interdependent wholeness of the marriage relationship, resulting, inevitably, in either a distortion or an overlap in the damages assessment."). For this reason, the court in *Huffer* held that, when the personal injury action has been tried alone, "it will be presumed that the trier of fact has included all consortium damages in the personal injury award, and the spouse with the consortium action, who could have joined in the personal injury action but did not do so, will be held estopped from thereafter asserting a claim for more consortium damages." Id. In settlement negotiations, however, the parties "should be left to protect themselves from duplication of damages for loss of consortium." Id.

[8] See *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494 ("joinder of claims, together with proper instructions to the jury and close scrutiny of the verdicts, will be sufficient to minimize the potential for improper verdicts"); see also *Zuniga* v. *Dwyer*, 323 Ill. App. 3d 508, 511, 752 N.E.2d 491 (2001) ("[w]henever possible, a spouse's loss of consortium claim should be joined with the impaired spouse's cause of action . . . because joinder of these related claims will . . . reduce litigation expenses for the parties, conserve judicial time and resources, and contribute a bit to the reduction of court congestion" [citations omitted; internal quotation marks omitted]); *Rosander* v. *Copco Steel & Engineering Co.*, supra, 429 N.E.2d 992 (to promote judicial economy while protecting party's right to maintain valid cause of action for loss of consortium, "best rule to follow . . . is to require joinder [of loss of consortium claim with underlying action] unless it is not possible to join the actions"); *Desjarlais* v. *USAA Ins. Co.*, supra, 824 A.2d 1278 ("a growing number of jurisdictions . . . require joinder of the consortium claims with the principal dispute . . . [in order] to avoid duplicative litigation . . . and [to reduce] the risk of multiple recoveries and inconsistent results" [citations omitted; internal quotation marks omitted]).

and to place the defendant on notice that settlement of the bodily injury claim will not extinguish all potential liability arising out of the underlying incident, it does not follow, logically or legally, that, when joinder has occurred, the termination of the underlying action by settlement must result in the termination of the loss of consortium claim.[9] Because, in the present case, the

[9] The majority nevertheless identifies what it characterizes as three "strong" policy reasons in justification of its decision barring one spouse from pursuing his or her loss of consortium claim after the other spouse has settled his or her personal injury claim. They are: (1) "when the claims are not resolved together, there is a greater probability of overlapping damages awards"; (2) "[w]hen the claims become untethered from each other, inconsistent outcomes may occur"; and (3) "requiring both claims to be resolved simultaneously promotes efficiency and conserves judicial resources by protecting against the repeated litigation of the same underlying issues." Far from strong, these policy reasons provide scant support for the majority's position because the potential problems are readily avoided by requiring joinder of the plaintiffs' claims, as *Hopson* directed. *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494–95. This is so because, as I have explained, when the parties and the court are aware of the status of the plaintiffs' claims, there simply is no reason why those claims, although related, must be resolved together in order to avoid the pitfalls identified by the majority.

Thus, as to the majority's first argument concerning overlapping damages awards, I agree that if both claims are to be tried, they should be tried together, and they will be tried together following joinder of the claims. If, however, one spouse's personal injury claim is settled and the other spouse's loss of consortium claim is not, as in the present case, there is no reason why the latter claim cannot be tried without the risk of overlapping damages awards. In such circumstances, the defendant will have agreed to settle the personal injury claim with knowledge that the loss of consortium claim had not been settled, and there is no reason why the settlement negotiations and amount would not reflect that fact. With respect to the loss of consortium claim, a proper jury charge on liability and damages would eliminate any possibility of an overlapping award.

For the same reasons, the majority's second policy justification, that is, the possibility of inconsistent outcomes, also is meritless. Indeed, the potential for an inconsistent outcome is no greater here than in any other case involving two persons injured by the same tortious conduct of the defendant. In other such cases, it would be unthinkable to require that both plaintiffs either settle or proceed to trial. Rather, each plaintiff proceeds in accordance with his or her own assessment of the case and the litigation risks, and there is no basis for mandating a different approach in the present case.

The majority finally contends that permitting one spouse's loss of consortium claim to proceed to trial after the other spouse's personal injury claim has been settled fails to protect "against the repeated litigation of the same underlying issues." This argument also is unpersuasive. There is no "repeated

plaintiff's loss of consortium claim was joined with the underlying bodily injury claim, I would conclude that the settlement of Voris' claim did not bar the plaintiff's claim.[10]

I recognize that, under the rule that I would adopt, there could be a case in which the spouse bringing the loss of consortium claim refuses to settle, and the defendant, although otherwise willing to settle the injured spouse's underlying claim, refuses to do so because he or she cannot settle the loss of consortium claim. In my view, however, this result is preferable to a result in which the injured spouse could unilaterally deprive the other spouse of a valid loss of consortium claim by entering into a settlement agreement for the

litigation" when the loss of consortium claim survives the settlement of the underlying personal injury claim; in such circumstances, there is, at most, only one trial, and there is no reason to think that that trial will result in an award of damages that is duplicative of the prior settlement award. Of course, a requirement that the loss of consortium claim must be dismissed following settlement of the underlying personal injury action results in no trial of the claims at all. This result, which the majority mandates today, is appropriate only if the loss of consortium claim is deemed, as a policy matter, to have little or no value independent of the underlying personal injury claim. Such a view, however, is inconsistent with the rationale underlying this court's recognition of an independent action for loss of consortium. See *Hopson v. St. Mary's Hospital*, supra, 176 Conn. 493 ("[T]he effect of [our prior decision refusing to recognize a claim for loss of consortium] is to deny the existence of any harm where harm is most assuredly to be expected. It is a well-settled principle of law that a tortfeasor takes his victim as he finds him. Should the victim be married, it follows that the spouse may suffer personal and compensable, though not physical, injuries as a direct result of the defendant's negligence and that such injuries should not go uncompensated.").

Rather than acknowledge that joinder of the two actions eliminates the risks that it has identified, the majority ignores the affect of joinder on the issue presented. It is telling, however, that nearly all other courts have rejected the approach taken by the majority, no doubt because joinder of the claims removes the concerns on which the majority relies in support of its decision.

[10] In order to prevail at trial on his loss of consortium claim, the plaintiff would have the burden of proving that the defendant's negligence caused physical injury to Voris, which, in turn, resulted in the plaintiff's loss of consortium.

bodily injury claim.[11] See *Jones* v. *Elliott*, supra, 551 A.2d 64–65 ("physically injured spouse may not unilaterally extinguish the loss of consortium claim of the other spouse by signing a general release, for the loss of consortium claim is not his to extinguish"); *Burke* v. *L & J Food & Liquor, Inc.*, supra, 945 S.W.2d 664 ("[t]he injured person is not the agent of his spouse simply because of the marital relationship, and he, therefore, has no power to bind his spouse by an agreement to which the spouse was not a party"); *Kibble* v. *Weeks Dredging & Construction Co.*, supra, 161 N.J. 190 ("[T]he wife's action [for loss of consortium] is vested in her and may not be dismissed unless authorized by her. The right . . . can only be released by the wife who owns it. Were it otherwise, a husband who refuses to litigate for whatever reason could effectively eliminate a claim that is not possessed by him." [Internal quotation marks omitted.]). In any event, cases in which the spouses are in adversarial positions with respect to each other and, therefore, might refuse to enter into a global settlement of all claims, would be the exception, and not the rule. In most cases, a rule allowing a loss of consortium claim even though the underlying claim has been settled would have no effect on the

---

[11] The amicus Connecticut Defense Lawyers Association argues that allowing a spouse to bring a loss of consortium claim when the underlying claim has been settled would require insurers to incur additional defense costs related to the loss of consortium claim where no duty to indemnify exists because the underlying claim has been settled for the policy limit. As in any litigation, however, the insurer and the defendant can decline to settle the underlying claim for the policy limit if they are aware of other outstanding claims and have a good faith belief that the injured spouse would recover less than the policy limit at trial. Moreover, if the injured spouse and the spouse alleging loss of consortium refuse to settle jointly for the policy limit, the insurer is in no different position than in any other case in which the total damages exceed the policy limit and a global settlement cannot be reached. Having recognized a cause of action for loss of consortium in *Hopson* more than thirty years ago, it would be incongruous for this court to decline to enforce the cause of action because doing so increases the amounts for which defendants can be held liable.

usual practice of settling both spouses' claims at the same time.[12] See *Oldani* v. *Lieberman*, supra, 144 Mich. App. 647 ("[i]n the usual case, where a husband and wife bring a principal claim and an additional loss of consortium claim in the same suit . . . a defendant settling with two such plaintiffs would be expected to make a payment to the two plaintiffs, to take releases from each, and to seek entry of an order dismissing the case as to each").

In support of its conclusion that the settlement of the underlying claim extinguishes a loss of consortium claim, the majority contends that, because our statement to that effect in *Hopson* was reaffirmed in *Ladd* v. *Douglas Trucking Co.*, 203 Conn. 187, 523 A.2d 1301 (1987), and *Jacoby* v. *Brinkerhoff*, 250 Conn. 86, 735 A.2d 347 (1999), disavowing that statement in *Hopson* would upset the well settled expectations that these cases created. I disagree. In *Ladd* v. *Douglas Trucking Co.*, supra, 197, this court concluded that a plaintiff in a statutory wrongful death action may not recover for postmortem loss of consortium. We reasoned that such claims are not cognizable because the "wrongful death statute has been regarded as the exclusive means by which damages resulting from death are recoverable"; id., 195; and the statute "authorizes an award only to the estate of the decedent"; id., 194; not directly to the members of his family. Id., 197. Although we cited

---

[12] At oral argument before this court in the present case, counsel for the defendant conceded that the usual practice in Connecticut is to require the injured spouse and the spouse making the loss of consortium claim to settle the claims at the same time. He further indicated that, in the present case, the defendant did not demand that the plaintiff release his loss of consortium claim when Voris released her claim for bodily injury because the plaintiff still had a pending bodily injury claim, which he did not withdraw until after the trial court granted the defendant's motion to strike the loss of consortium claim. Counsel for the defendant further stated that he "had every reason to believe" that, under *Hopson*, the settlement of Voris' claim would operate automatically to extinguish the plaintiff's loss of consortium claim.

*Hopson* for the proposition that "the action for loss of spousal consortium [is] 'derivative of the injured spouse's cause of action' and . . . such a claim would be barred when a suit brought by the injured spouse had been terminated by settlement or by an adverse judgment on the merits"; id., 195; that statement was entirely superfluous to our reasoning in *Ladd*. The postmortem loss of consortium claim in that case was not barred on the grounds that it was derivative of the underlying wrongful death action and that the underlying action had been terminated. Indeed, the action had *not* been terminated. The loss of consortium claim was barred because such claims are not authorized by the wrongful death statute, which provides the sole mechanism for recovering damages resulting from a death.

In *Jacoby* v. *Brinkerhoff*, supra, 250 Conn. 87, this court considered whether the plaintiff husband could bring a loss of consortium claim arising from the alleged negligence or intentional misconduct of the defendant, a psychiatrist who had treated the plaintiff's wife, when the wife had declined to bring a claim against the defendant. A majority of the court stated that "[o]ur dictum in *Hopson* [that a consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits] is a roadblock to the plaintiff's claim for recovery . . . . We can discern no viable distinction between precluding a consortium claim when the injured spouse has settled with the alleged tortfeasor and precluding it when the injured spouse, as in this case, has declined altogether to sue the alleged tortfeasor." Id., 91. The majority then noted, however, that the plaintiff had cited a number of authorities "for the proposition that [mandatory joinder of the loss of consortium claim to the underlying claim of the injured spouse] may be excused if intervening events have made it impossible." Id., 92–93. The majority ultimately

concluded that, because a loss of consortium claim is derivative of an underlying claim in which "all of the elements of a tort action [by] the [injured] spouse must exist"; (internal quotation marks omitted) id., 94; "the plaintiff cannot pursue an action for loss of consortium *in the absence of any basis in the record for a finding that his former spouse was injured as a result of her treatment by the defendant.*" (Emphasis added.) Id., 95. In other words, the court ultimately concluded that, even if the plaintiff could overcome the "roadblock" of *Hopson* by showing that there are cases in which the joinder of a loss of consortium claim to the claim of the injured spouse may be excused, his claim nevertheless foundered because there was no evidence of any injury to the plaintiff's spouse. Thus, the court in *Jacoby* implicitly recognized the possibility that a loss of consortium claim can be raised independently, provided that the record supports a finding that the defendant was legally responsible for the injured spouse's injuries. Indeed, if this court had believed otherwise, there would have been no need for the court's discussion of the specific facts and circumstances of that case. I would conclude, therefore, that, in *Jacoby*, we relied on *Hopson* only for the general proposition that, because loss of consortium claims are dependent on evidence that the defendant was legally responsible for the injured spouse's injuries, the claims ordinarily should be joined for trial. We did not rule out the possibility that there could be exceptions to this rule.[13]

For the foregoing reasons, I would conclude that the plaintiff's loss of consortium claim in the present case

---

[13] Even if our decisions in *Ladd* and *Jacoby* had created a legitimate expectancy that the settlement of the underlying claim necessarily extinguishes the loss of consortium claim, the proper resolution of the issue presented in this case would be to limit our overruling of *Hopson* to future cases only, thereby denying the plaintiff relief in the present case. For the reasons set forth in this dissent, however, neither of those two cases dictates such a result.

was not extinguished by the settlement of Voris' bodily injury and loss of consortium claims and, therefore, the trial court improperly granted the defendant's motion to strike the plaintiff's claim. Accordingly, I would reverse the judgment of the trial court and remand the case for further proceedings on that claim.